IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CEW PROPERTIES, INC.,<br>d/b/a CEW GUN SALES, | )<br>)<br>) | |
| Petitioner, | )<br>) | |
| vs. | )<br>) | No. CIV-18-401-C |
| U.S. DEPARTMENT OF JUSTICE,<br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS, AND EXPLOSIVES, | )<br>)<br>)<br>) | |
| Respondent. | ) | |

MEMORANDUM OPINION AND ORDER

Now before the Court is the Respondent's Motion for Summary Judgment (Dkt. No. 15). Petitioner has filed its response (Dkt. No. 16) and the Respondent has filed its reply (Dkt. No. 17). The motion is now at issue.

I. Background

Petitioner is a low-volume arms dealer wholly-owned and operated by Charles Wilson. (Dkt. No. 15, pp. 3-4, 9.) Mr. Wilson is a former law enforcement officer, and maintains the arms dealership as an additional form of income—his main line of work is asset recovery. (Id. at 9; see also Dkt. No. 16, p. 5.) In 2003, Mr. Wilson, on Petitioner's behalf, applied for a federal firearms license ("FFL") from the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "Respondent"). (Dkt. No. 15, p. 4.) In 2004, before receiving an FFL, Mr. Wilson submitted to an application inspection. (Id.) During this process, officials from the Respondent gave him an overview of federal firearms regulations. (Id.) Specifically, they provided him information regarding

background checks and certain record-keeping requirements during this process. (Id. at 11.) In recognition that this was just an overview, however, Mr. Wilson acknowledged his responsibility to familiarize himself with all federal firearms regulations. (Id.) Petitioner was ultimately issued an FFL in 2004.

In 2012, Mr. Wilson, on behalf of a separate organization, applied for an additional FFL. (Id.) During this process, he received a similar pattern of training and information: The Respondent reviewed some federal firearms regulations with him, including regarding background checks and record-keeping requirements, and he again affirmed his responsibility to familiarize himself with all pertinent FFL regulations. (Id. at 12.)

The Respondent conducted its first compliance inspection of Petitioner in 2017. The inspection took place from July 20, 2017, to August 18, 2017, and examined all of Petitioner's firearms-related business activity for the time period of July 20, 2016, to June 25, 2017. (Id.) During this time period, Petitioner acquired 10 firearms and disposed of 15. (Id. at 9.) This inspection revealed numerous regulations violations including: (1) Petitioner's failure to conduct National Instant Criminal Background Checks ("NICS" checks) before transferring firearms to unlicensed persons seven times within this time frame, in violation of 18 U.S.C. § 922(t) and 27 C.F.R. § 478.102(a); (2) Petitioner's failure to properly record the acquisition of approximately 277 firearms, and the disposition of 16 firearms, by failing to keep them in an A&D bound record (also known as a "bound book"), in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.125(e); and (3) Petitioner's failure to fully document firearm transfers on the ATF Form 773 on at least 12 occasions,

in violation of 18 U.S.C. § 923(g)(1)(A) and 27 C.F.R. § 478.124(c). (Id. at 5-9.) As a result, the Respondent sent Petitioner a notice to revoke its FFL.

In response, Petitioner timely requested an administrative hearing, which was held February 8, 2018. (Id. at 5.) At the hearing, Petitioner stipulated to every violation alleged by the Respondent, and presented neither additional witnesses nor any other evidence in its defense. (Id. at 10.) Instead, Petitioner relied on arguments from counsel and testimony from Mr. Wilson in its attempt to persuade the Respondent that Petitioner's violations were not willful. (Id.) The Respondent ultimately disagreed and found that Petitioner's violations were willfully committed. The Respondent thus issued its final notice of revocation to Petitioner, citing approximately 347 violations of federal firearms regulations. (Dkt. No. 16, p. 6.) Petitioner thereafter filed this action, seeking review of the Respondent's findings, particularly its finding that Petitioner's violations were willful. The Respondent now moves for summary judgment, contending that the undisputed facts conclusively demonstrate the willfulness of Petitioner's violations.

## II.  Standard

A key policy goal and primary principle of Fed. R. Civ. P. 56 is "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Fed. R. Civ. P. 56 sets the standard for summary judgment:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).

The revocation of an FFL "is subject to *de novo* judicial review pursuant to 18 U.S.C. § 923(f)." Augustson v. Holder, 728 F.Supp.2d 1279, 1282 (D.N.M. 2010). But de novo review does not require an additional hearing; absent a genuine issue of material fact, it is unnecessary to hold an evidentiary hearing before ruling on a Rule 56 motion. See Breit & Johnson Sporting Goods, Inc. v. Ashcroft, 320 F. Supp. 2d 671, 673 (N.D. Ill. 2004) ("Absent genuine issues of material fact, a court may properly grant summary judgment without an evidentiary hearing."); DiMartino v. Buckles, 129 F.Supp.2d 824, 827 (D. Md. 2001) ("The reviewing court can grant summary judgment without conducting an evidentiary hearing if no genuine issues of material fact exist."); T.T. Salvage Auction Co. Inc. v. Sec'y, U.S. Dep't of Treasury, 859 F.Supp. 977, 979 (E.D.N.C. 1994) ("when it is clear that there are no genuine issues of material fact, the granting of summary judgment is proper without conducting an evidentiary hearing").

### III. Analysis

The Attorney General is authorized to revoke a gun dealer's license if the licensee has "willfully violated any provision of [the GCA]." 18 U.S.C. § 923(e). Within the Tenth Circuit, "willfulness" is shown where a petitioner was aware of the legal requirements, yet disregarded or was plainly indifferent to them. Borchardt Rifle Corp. v. Cook, 684 F.3d 1037 (10th Cir. 2012). Additionally, "[b]ad purpose or evil motive is not necessary to establish willfulness." Breit, 320 F. Supp.2d at 678-79. Indeed, a single willful violation is sufficient to uphold an FFL revocation. See, e.g., Armalite, Inc. v. Lambert, 544 F.3d 644, 647 (6th Cir. 2008); see also Augustson, 728 F. Supp. 2d at 1279.

For the most part, Petitioner does not dispute that it violated the law[*]; it maintains, however, that these violations were not willful and that its FFL was thus unlawfully revoked. Petitioner believes its actions cannot be interpreted as willful for three main reasons: (1) many revocations involve some sort of warning before the license was revoked, and no such warning occurred here; (2) Petitioner reasonably relied on some faulty assumptions in committing its violations; and (3) some violations were the result of mere negligence, as this is only a side business for Mr. Wilson. (Dkt. No. 16, pp. 29-32.)

Nonetheless, the Court finds that Petitioner's FFL was properly revoked. While Petitioner was not warned of its violations prior to revocation, the law is clear that this is not required. See, e.g. Francis v. U.S. Bureau of Alcohol, Tobacco, and Firearms, Case No. CIV-05-380-RAW, 2006 WL 1047026 (E.D. Okla. Apr. 20, 2006) (repeated violations following warnings are not necessary to establish willfulness). The Respondent need only demonstrate that there is no genuine issue of material fact regarding whether Petitioner plainly disregarded its known legal requirements.

---

[*] The only legal violations Petitioner disputes concern its failure to keep firearms records in an A&D bound record. Regarding these violations, Petitioner maintains that there remains a genuine question regarding the definition of a bound record, and whether Petitioner's original record-keeping practices violated it. (Dkt. No. 16, pp. 17-18.) The Court, however, is puzzled as to why Petitioner failed to raise this argument at the administrative hearing, where it unambiguously stipulated to these violations. (Dkt. No. 15-16, pp. 42-45.) Regardless, the Court finds that the definition of a bound record is clear enough to put Petitioner on notice that its original method of record keeping—storing files in separate file folders—was in violation of ATF regulations. See 27 CFR § 478.125(e). Thus, Petitioner has failed to raise a genuine issue of material fact regarding the A&D book violations.

5

Here, the Respondent has established: (1) Petitioner, a low volume firearms dealer, engaged in numerous federal firearms regulation violations; (2) Petitioner's president, Mr. Wilson, applied for an FFL on its behalf in 2003; (3) in 2004, the Respondent advised Mr. Wilson regarding federal firearms regulations and provided him information regarding background checks, the A&D book, and Form 4473; (4) Mr. Wilson further acknowledged he would be responsible for familiarizing himself with all relevant firearms laws and regulations; (5) Mr. Wilson received more information and guidance in 2012, when he applied for another FFL on behalf of a different organization; and (6) during this process, Mr. Wilson again received information regarding background checks, the A&D book, and Form 4473. Mr. Wilson again recognized that he was only receiving general information and that he would be responsible for keeping up with all of the laws governing his FFL. (Dkt. No. 15, pp. 4-11; Dkt. No. 16, pp. 7-14.)

Given the length of time Petitioner had held an FFL, the amount of information and training Mr. Wilson had received, and the fact that Mr. Wilson twice affirmed that he understood he needed to familiarize himself with federal firearms regulations, the Court finds that Petitioner's violations were willful. See 3 Bridges, Inc. v. United States, 216 F.Supp.2d 655, 658-59 (E.D. Ky. 2002) (finding substantial evidence in the administrative record to support willful violation of GCA where, inter alia, the licensee had been a dealer for ten years and had manuals on how to comply with the GCA); see also Trader Vic's Ltd. v. O'Neill, 169 F. Supp. 2d 957, 965 (N.D. Ind. 2001) ("As a federal firearm licensee, Reid had a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco and Firearms and to follow those mandates."). The Court further finds that

Petitioner has failed to raise a genuine issue of material fact regarding any of its violations. Accordingly, the Court finds that the revocation of Petitioner's FFL should be upheld.

CONCLUSION

For these reasons, the Respondent's Motion for Summary Judgment (Dkt. No. 15) is GRANTED, and the Respondent's decision to revoke Petitioner's FFL is hereby AFFIRMED. A Judgment shall enter accordingly.

IT IS SO ORDERED this 30th day of May, 2019.

ROBIN J. CAUTHRON
United States District Judge